Motion to vacate default judgment. Any issues presented or whether the district court erred in determining that there was a willful default based off of pre-service and post-default acts or omissions, whether they erred in refusing to weigh the remaining good cause factors in the motion to vacate, and whether they erred in refusing to consider the other arguments made in the subsequent motion to vacate, and whether they erred in denying a 59E motion to alter or amend. Isn't the only real question whether there was ever proper service in the proper county in Florida? Well, that was the argument raised in the motion to vacate. The district court denied the motion to vacate finding there was willful default. Now, the way they found willful default was because allegedly in dispute, my client told the process server, good luck serving me. And so the district court used that pre-service statement to find willful default. And the case law from this court is clear that there's no duty to answer at that point, so that can't be used for evidence of willfully defaulting. So that's kind of the first domino to the case. The second domino, whether or not the defendant was served in the wrong county. Does that answer the question or . . . Go ahead. It seems to me it all comes down to whether there was ever proper service. I can't see that there was in the correct county. Well, to that point, Florida, like most if not all states, requires if you serve a defendant it needs to be in the county they reside. If, for example, you were going to get served by a publication in New Orleans and they published it in Baton Rouge, you would never actually get notice of it and that's the purpose of the rule. So in this case, in the excerpts on tab eight, I've got maps of where the defendant lives as opposed to the county where the publication was. And it's close, but you can demarcate that it is in a different county. And so that's what the defendant initially attempted to argue in his pro se motion, but that's when the court decided, well, because you told the process server good luck, you willfully defaulted. We're not even going to consider those arguments. After that, I got involved. The court said that there wasn't any site to anything that said you had to be in the same county, that it wasn't enough to be like in the next door county. But now you have cited this as kind of a little bit of a walkthrough because it's the county of the court. Well, obviously that isn't, I mean, the court is not in Florida in this case. So I'm just wondering, I mean, y'all are kind of walking through and creating that it has to be in the county of residence. It's not exactly what the statute says. So can you explain that? Is that what the Florida statute says? Yes. The Florida statute says, you know, you sue them in the county of their residence. And then the notion of the publication is in the county of the court. And you all are answering that as, well, that must mean the county of residence. It doesn't actually say that. Because we're not actually in Florida. I understand. Well, it still stands to reason, though, that you need to be in the same county. I would argue otherwise. But to that point. To give notice in the county of the person's residence. Yes, sir. I mean, that's not what the statute says. It says the county of the court. And, of course, that's not, I mean, it's not in Florida. But you all walked it through and said that means the county of residence. I'm just asking about that, where you got that. Well, I think it stands to reason. But, again, we never even got to the determination on that issue. Well, but Judge Smith is right. We don't care about anything else unless you've been served, or your client's been served, right? Yes, ma'am. Okay. So don't we have to figure out the service? Yes, ma'am. Okay. So I think that's what he was asking about, and that's what I'm asking about. Well, I would maintain that he was never properly served ab initio. So now he's got a judgment against him. But it was based off of improper service. And so for that alone, it should be reversed and vacated. But going back on track to the argument, I filed a 55C motion after he filed his Pro Se motion. And the court decided that I could not rehash, was the word they used, any arguments made in the prior, what he styled as a Pro Se 60B motion. And so if you look at, in the brief, I really dug through the case law that they cited on that, page 17 through 19. They start, the court cited Ockman Loan Servicing v. Heiberg. And that language about not, the prohibition of rehashing arguments in a motion to reconsideration, the case law all goes back to cases involving 59E, motions to alter and amend. So essentially the courts, the court ruled that you cannot ask the court to reconsider any arguments in a motion to reconsideration, which is a bit of a paradox. And so that's another error that was brought up but again denied. We're seeking a reversal on it. What's this case worth? Over $100,000, which maybe isn't . . . It's what? I'm sorry? What did you just say? Over $100,000? Over $100,000, which isn't maybe the biggest case ever in this court, I understand. But it's still a substantial amount of my client. Seems like sort of a slow start to get this underway. I'm sorry? It seems like a slow start to worry about the service, just get the service done. It hasn't gotten done, but y'all are like quibbling about the wrong county. Well, he got a, the default was entered. Yeah. And the next step after that is the default judgment. He pro se asked to vacate it. It was denied and that's when I got in. We've kind of been squabbling over whether or not it was done correctly from the get-go. Yes. Okay. So . . . With that, I'll reserve. All right. You seem to have time for a bottle, Mr. Sherrard. Mr. Espinosa? Good morning to this court. Edmundo Espinosa appeared in pro se as originally a plaintiff and now the appellee. And may it please the court. I will try to be brief, but at the same time, I'll try to be as clear as possible. And I'm going to mention some aspect. Recently, or fairly recently, I had a car accident and my left ear is not that great, but I think I do well. So, factually, everything that I'm going to say is supported by the record. And originally, when Humphreys got in touch with me at the end of 2011, he had just been released from prison. And he was asking me for counseling on a criminal . . . Let's go to the merits of the appeal that we've got here today. Was there ever service or process? Let me then zero in on the issue. One time, and this is the issue that was just discussed with counsel on the county. At some point, I went over to Pensacola and Mr. Humphreys picked me up. And he says, I'm going to show you where I live. And he drove me up the peninsula of Pensacola. And there was a big building. He says, that's Portofino. That's where I live. And he said, this is Gulf Breeze, County of Santa Rosa. Later, during the proceedings, when I mailed things to Mr. Humphreys in the post office, and there's a receipt. He said that that address of Portofino is in Gulf Breeze City, County of Pensacola. So, I think that we properly served. Now, I'm just going to backtrack to be able to cover this. You're talking about service by publication? I'm sorry? Service by publication, is that what you're saying? Yes. And you served by publication in which county? In the county of Santa Rosa. They say that it's Escambria County. I say that it's Santa Rosa County that covers that area of the peninsula. And I showed documentation and all that to prove that. Is it in the record as to what his physical address is in Florida? I'm sorry? Does the record reflect what his physical address is in Florida, or was at this time? Yes, it is. It is. It's in the record? It's in the record, yes. All right. Well, it would be easy enough for us to even to take judicial notice of which county that address is located in, couldn't we? Well, if I understand your observation, I'm saying that we – I, through the process service, we tried to serve him personally two and a half months. Then we tried to serve him by substitute service. And he received it on the same email that he had been using, substitute service. He knew that there was – when the process server talked to him on August the 13th on the phone, the process service told him, This is a lawsuit brought by Espinoza against you. Two years prior to me filing this complaint, I had filed the first complaint when I had an attorney back then, and we served him. And he responded, and he read the complaint. This second complaint was identical to the first one. So he knew when the process server told him that Espinoza has got a lawsuit and I need to serve you. And he went all along. Well, actual notice of the existence of a suit doesn't constitute service of process. Well, I personally, legally, because I followed the procedure under Florida, he was – he evaded service personal. He couldn't do anything about the substituted service, and then I used all of that, 23 attempts to serve him. And he still lived in the same place when he was saying that he did not. And then, of course, I used all that, and then I filed for service by publication. So I did it. I served him. He had actual knowledge of all this. He had the notice. He knew what was going on. And I decided, in my professional opinion, I think that what he thought is that if I didn't serve him personally, that was it. I lost. I'm out. Case dropped. He didn't know about substituted service. He didn't know about publication. But this is what I did. I followed every rule 23 times. And if I may, even the district court found – and this is something that I have to read on the record if you don't mind. The district court said, first, although defendant says he retained counsel on August 21, 2020, to file the instant motion, he offers no explanation for failing to object or otherwise respond to them, the FCRs, and so forth. He said, yet court records reflect that the order was electronically sent to him to his mail address. That's the one where I did the substituted service. He provided the same domain to the court to register with the district court in order to be able to participate himself prior to him filing his first motion to vacate. Defendant's failure to object to the FCR in particular weighs against the equities in determining whether his motion should be granted. Overall, defendant's action suggests he has chosen to play a game with the court. And that's our position. I'm just a little unclear. Is there a dispute over what county he was living in? They say that it was Escambria County. I'm saying that it was in Santa Rosa County. Okay, but why isn't that something that can be determined as a matter of – I mean, there shouldn't be a dispute about that. Or has the county changed over time? Or is there some reason why there's a dispute? I don't think it did. I don't think it did. Okay, so then why isn't that something that can be determined as a matter of law as opposed to being a fact issue that the district court has to decide? Thank you. Even the district court – well, magistrate judge, district court adopted it. Even then, the district court said they haven't shown any law whatsoever in support of the argument that we served the notice of publication in a different county. They didn't. There was nothing there. There's still nothing there. He was served in the proper county for service of publication. Okay, well, now they've cited these statutes that I said they're walking through this notion that the county of the court is the place where you would have sued if you sued in Florida instead of Dallas. Yes, I understand what you're saying, but being that I used, obviously, as the court stated and the district court stated, that I was properly serving using the Florida statute, and that's a state statute. And it's clearly outlined as to what it is that I have to do in order to be able to serve the requirements before I serve and allow to be served my publication. Yeah, but that's not the distinction here. The question here is, is it true that you have to publish in the county where the person resides and you did not? Actually, I did. I did serve in the county where he resided. I did serve, and that wasn't in Santa Rosa County. They just raised the argument that it was in Escambria County because it says that it applies to the city of Pensacola. And I said, no, no, no, no, no. I served properly and based on the statute. Santa Rosa County is where he lives. That's where he resides. That's where the Portofino building is. That's the question about it. I never doubted that. So I follow the proper letter of the law as far as the Florida statute saying you must file in the county. The county where he was living and still living is in Santa Rosa County, the city of Gulf Street. That's where Portofino address is. That's what I did. Okay, but he has some evidence that it's in a different county. What do we do with that? I mean, this just seems strange to me. Like, we know we're in Orleans Parish. How can we debate that? How can we debate what county we're in or what parish we're in or whatever? That's what I'm trying to understand. They have evidence that it's a different, this same address, this Portofino address is a different county. And I'm asking, how the heck are we supposed to figure that out? I grew up in Florida, but not in Pensacola. And I know what county I was in. I understand you're out. But that's the situation that we have. I think that we serve in the proper county under the law of Florida. Now, obviously on the issue of willfulness, I know that that's a preliminary issue, but I think that we serve him properly all throughout. We follow the right procedure. He lives in that county and the statute says serve him in the county where he lives. He lives in Santa Rosa County. Now, if we go one step ahead, we see on the issue of willfulness here, in my view, and obviously the magistrate clearly delineated on the issue of willfulness. It was a decision made by the district court, the magistrate judge adopted by the district court, that she made a credibility of witness decision. And the credibility is up to the court, to the court who reviewed all the evidence in order to be able to say this individual is not credible. And if that is the case, and she made the finding, they have not proven that that decision was arbitrary and capricious under the abuse of discretion. They have not. All the evidence is there. During the conversation, I don't live there anymore. I'm living with my terminally ill mother, but then at the same day, he's leaving for out of the country and leaving the mother there. He says that he's not going to. He says that a few days later, he's not going to. And all along, he was living at the same address that he used and has always used. The only difference was that at the beginning, he moved from the 8th floor to the 11th floor. And the district court saw that, and it was an issue of credibility. He says, now, that refusal, that evasion is willful. It was such an intentional conduct on his part. And based, obviously, on Lacey v. Seitel, if that is a final, then, obviously, everything stops. All we have to do is prove under Lacey v. Seitel that it was willful and that ends the inquiry. Why don't you just put an end to it and serve him in Escambia County? I'm sorry? Why don't you just put an end to all of this and serve him in Escambia County if he says that's where I live? Serve him there. I think I did that. Okay. We'll see. Thank you very much. I appreciate it. All right. Thank you, Mr. Esposito. Mr. Sherrard, you've saved some time for a vote. Thank you, Your Honor. On the county issue, maybe this will give some clarification. My client lives on one of the intercoastal islands, and if you're familiar with how those work, there's long strips of land that outline Florida, and some of them are cut down the middle by county line. He is close to Santa Rosa County, but he is on the Escambia side of the island. There are neighborhoods in Portofino. There are neighborhoods in Escambia named Santa Rosa. It's a little confusing on that, from that perspective, but at the end of the day, his residence is in Escambia County. Now, there was a lot of argument about that the willfulness analysis was correct. Now, is Gulf Breeze, you're saying Gulf Breeze is split in two? Gulf Breeze, the city of Gulf Breeze, is also in two different counties, as many counties are. Because the post office said it was Gulf Breeze. That's correct. But again, the location of my client's residence is in Escambia County. So, on the willfulness, again, the case law is clear. Evasion of service cannot be used as evidence of willfully defaulting, almost by definition, but more specifically, because there is no duty to answer at that time. So, if I'm not served, I can't willfully default. And on top of that, the court used, for instance, not objecting to the original FCR as evidence of willfully defaulting. This is after he filed a motion to vacate, and that was denied, and the court construed him not objecting to that as willfully defaulting. So, the window for default is between getting served and getting the default entered against you, and so they used evidence on the ends of that, outside of that window, as willfully defaulting. And when they did that, they ended the inquiry and did not go on to any of the additional factors, which I believe we would have prevailed upon. Also, Mr. Esperman has brought up the email that was sent to. He asked for service by publication and not via email, so that would not be effective service. So, nothing further, Your Honor. Thank you, Mr. Gerard. Thank you. Your case is under submission. Last case for today, Jones v. Administrator.